IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 17-05024-01-CR-SW-MDH |
| RAYMON DALE DURHAM, | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Before the Court is Defendant Raymon Dale Durham's Motion to Suppress Evidence (doc. 21), which has been referred to the undersigned for preliminary review pursuant to 28 U.S.C. § 636(b). Defendant Durham moves to suppress all evidence obtained as a result of the search warrant issued on September 19, 2016, to search Defendant's laptop, an S.D. card and a jump drive. The undersigned held an evidentiary hearing on August 29, 2019. (*See* Doc. 30.) Defendant Durham was present with his attorney, Michelle Moulder, and the United States Government was represented by Assistant United States Attorney Ami Miller. (*Id.*) The Court heard testimony from Dave Hubert, formerly an officer with the Aurora Missouri Police Department.[1] (*Id.*) For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion be **DENIED**.

### I. Findings of Fact[2]

On September 15, 2016, Officer Hubert responded to a call for service in Aurora, Missouri, after a female caller, Stephanie Edwards, reported she had located photos of juvenile females on an S.D. card belonging to her fiancé, Raymon Durham, the Defendant in this matter. On Hubert's arrival, Edwards explained she had confronted Durham after discovering he was a registered sex

---
[1] Officer Hubert resigned From the Aurora PD and is now employed by the Republic Police Department.
[2] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion. The parties' exhibit indices appear at Doc. 29. The hearing transcript appears as Doc. 30.

offender, but his account conflicted with information she received from the Webster County Sheriff's Department. She began packing his things to remove him from her home and found an S.D. card, a jump drive and a lap top among his belongings. She placed the S.D. card in a digital picture frame and saw photos of juvenile females in low-cut shirts. The S.D. card was loaded in the frame when Hubert arrived. Although Hubert did not ask Edwards to show him the photos, she voluntarily began to scroll through them. Concerned the time and date stamp could be altered by viewing the photos on the digital frame, he advised her to stop scrolling through the photos after observing two of them and instructed her to take the S.D. card out of the frame. Hubert testified the photographs (doc. 29, Gov. Ex. 2 and 3) depicted what he believed to be younger females in low cut shirts with their cleavage displayed but did not show any part of the nipple or aureola or any genitalia.

Edwards explained the items were not hers and Durham was no longer welcome in her home. She stated she was not sure if there was anything on the jump drive and was not able to log into the computer. Hubert asked Edwards to fill out a written statement. (*See* Doc. 29, Gov. Ex. 1.) In her written statement she noted she found "an SD card with photos of young females – not nude," and "found nothing on" the jump drive. Based on the nature of the photos and Durham's prior criminal history, Hubert believed he had probable cause to seize the devices and apply for a warrant. He secured the items in evidence, where they remained until he acquired a search warrant.

On September 19, Hubert contacted Edwards to ask if Durham had ever assaulted her son. Edwards reported Durham had not assaulted her son but had sexually assaulted her. Edwards came to the police station to provide a statement about the assault, stating on their first date they spent several hours in Springfield and returned to her house in Aurora to have sex. Three to four weeks

into the relationship he became more sexually violent[3] and insisted on moving in. Edwards gave an oral and written statement about the assault followed by an additional oral statement that was audio and video recorded. Hubert accompanied Edwards to the hospital for a sexual assault forensic exam. He did not receive a final medical report prior to drafting his warrant but was advised the exam showed no trauma to Edwards's vagina or anus.

Hubert prepared an application for a search warrant detailing his investigation. (Doc. 29 Ex. Gov. Ex. 4.) In a statement of probable cause, he described Edwards's actions after learning of Durham's criminal history. The affidavit noted Durham's "three counts and one conviction for Use of a Child in Sexual Performances" based only on Edwards's report of the information she allegedly received from the Webster County Sheriff's Office.[4] The affidavit further states in relevant part as follows:

> Edwards stated she began packing Durham's items and located one jump drive, and one S.D. card. Edwards stated she looked at the S.D. card and located several photos of young juvenile females. Edwards had the S.D. card in a photo frame and showed a few photos of what she was talking about and they appeared to be young juvenile females taking photos of themselves lying down, on a bed, wearing a low-cut shirt, with their breast pushed towards the top of their shirt. Another photo was of a young female taking a photo of herself, and she was wearing a low-cut shirt with her breasts showing from the top. The young female was holding the camera up with the lens facing downward taking the photo. Edwards stated she was not sure if anything was on the jump drive or the laptop.

When asked why he did not use the terms "not nude" and "found nothing on" as described in Edwards's written statement, Hubert testified he described the photos in the affidavit based on the details he observed. He further testified he relied on Edwards's verbal statement to him that she was "not sure" if anything was on the jump drive and found her written statement just a different way of saying the same thing. The probable cause statement also described the laptop,

---

[3] Explicit details of this sexual violence as elicited during Hubert's testimony have not been detailed here.
[4] The information within the affidavit does not specify whether Hubert independently confirmed this information, however, Hubert's report (doc. 29, Gov. Ex. 5) demonstrates he conducted a search of Durham's criminal record.

3

S.D. card and jump drive and the need to use "data analysis techniques" to search the items. Hubert did not set forth his experience or training in the affidavit or aver his basis for believing why the discovery of the photos of the juvenile females created a fair probability that the items seized would contain evidence of the possession of child porn.

Hubert presented the completed warrant application and statement of probable cause to the Lawrence County Prosecuting Attorney, Don Trotter, who reviewed the warrant and affidavit and, unlike some prior occasions, never instructed Hubert to add additional information or suggested the warrant lacked probable cause. After Trotter signed the search warrant application, Hubert presented the warrant application to a judge, who also reviewed the entire application packet and never indicated it lacked probable cause. After the judge issued the warrant, Hubert contacted Task Force Officer Brian Martin, with Cyber Crimes, advised him of the situation and transferred the seized items to Martin's custody for analysis. Evidence was obtained from the search of the items and this indictment followed.

## II. Conclusions of Law

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Defendant contends the evidence obtained as a result of the search warrant and should be suppressed because Hubert violated *Franks*[5] in obtaining the warrant. Specifically, Defendant argues Hubert deliberately "mischaracterized" the evidence by omitting details that would have defeated the probable cause determination. Defendant also argues Edwards's search

---

[5] *Franks v. Delaware*, 438 U.S. 154 (1978)

of the S.D. card was unlawful because she was acting as an agent of the government and, further, that the warrant was generally not supported by probable cause. In response, the Government argues Defendant fails to demonstrate the affidavit was based on false or misleading information and asserts even if the affidavit lacks probable cause, the good faith doctrine applies. The Court takes up the arguments below.

### A. *Franks* Challenge

A defendant may challenge a search warrant on the grounds that the probable cause determination was based on an affidavit containing false statements or omissions made intentionally or with reckless disregard for the truth. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir.2007) (citations omitted). "To obtain a *Franks* hearing a defendant must make a 'substantial preliminary showing' of a deliberate or reckless false statement or omission which was necessary to the finding of probable cause, a requirement which is 'not easily met.'" *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008); *see Franks*, 438 U.S. at 170-72. To prevail, the defendant must not only demonstrate a false statement or omission was deliberately or recklessly included or omitted but must also establish the affidavit would lack probable cause if the allegedly false information is ignored or the omitted information added. *Id.*; *United States v. Coleman*, 349 F.3d 1077, 1083 (8th Cir. 2003). Courts do not require that every fact recited in an affidavit be correct. *United States v. Buchanan*, 574 F.3d 554, 563 (8th Cir. 2009). Thus, a *Franks* challenge "must be more than conclusory." *Franks*, 438 U.S. at 171. "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. Crissler*, 539 F.3d 831, 834 (8th Cir. 2008) (*citing Franks*, 438 U.S. at 171).

Here, Defendant fails to meet the first *Franks* requirement because he cannot make the

required "substantial preliminary showing" demonstrating Hubert deliberately or recklessly included false information in or omitted information from the affidavit. The Court nevertheless gave Defendant the benefit of a *Franks* hearing, allowing counsel to cross examine Hubert about the descriptions of the photos and the jump drive.

Defendant first argues Hubert's affidavit "mischaracterizes" the photos, arguing the affidavit should have described the juveniles depicted as "not nude." Defendant's opinion that Hubert should have used this particular description is not enough to demonstrate the statement was false or misleading. The affidavit describes what is depicted in the photos in detail, including that the females pictured wore "low cut shirt[s], with their breast[s] pushed towards the top of their shirt," a description supporting an inference that the juveniles in the photos were clothed and thus not nude. Further, in viewing the photos, the undersigned does not read the description in the affidavit as inaccurate or find it falsely insinuates nudity because the words "not nude" are absent. Defendant does not explicitly argue that this description improperly implies the juveniles depicted were nude, but instead asserts the phrase "not nude" was a "central fact that if known to the court, would negate probable cause." However, as later discussed, probable cause to believe a suspect possess child porn is not contingent on pictures depicting nudity or the absence of nudity. Further, even if the affidavit could have or should have included additional descriptions, the undersigned does not find such an omission was deliberate or reckless.

Defendant, pointing only to the photos, relies on the conclusory accusation that Hubert acted deliberately or recklessly to describe the pictures in a misleading manner. Whether a statement was made with reckless disregard for the truth turns on "whether . . . the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir.

6

2010). Recklessness may be inferred when omitted material would have been "'clearly critical' to the finding of probable cause." *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019). Given the detail in the description, the undersigned finds it difficult to agree Defendant's subjective interpretation of how the photos should be described provides reliable corroboration that Hubert intended to deliberately or recklessly deceive the judge. Here, based on the specific detail in the affidavit, the undersigned cannot find Hubert entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. Nor can the undersigned conclude the phrase "not nude" was *clearly* critical to the probable cause determination as the affidavit describes the juveniles in items of clothing.

Defendant next argues the affidavit omits details about the contents of the jump drive, but the undersigned disagrees the description of the jump drive was false or misleading. Given Edwards's conflicting statements, Hubert appropriately accepted as true Edwards's initial statement that she did not know what was on the jump drive. *See Buchanan*, 574 F.3d at 563 ("An affidavit must "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true"). The fact that Edwards provided inconsistent verbal and written statements does not demonstrate Hubert's inclusion of Edwards's verbal statement in the affidavit was false or that the omission of her subsequent written statement was misleading.

Given Hubert's credible testimony that he described the photos as he saw them and believed Edwards's statements about the jump drive conveyed the same meaning, the undersigned finds the alleged omissions are, at most, minor discrepancies, which do not show a deliberate or reckless falsehood. *See Coleman*, 349 F.3d at 1084. As Defendant has not demonstrated a false or misleading statement deliberately or recklessly included or omitted in the affidavit, the Court need not analyze the second prong of the *Franks* test. Accordingly, the *Franks* challenge is denied.

7
Case 3:17-cr-05024-MDH    Document 31    Filed 12/05/19    Page 7 of 13

### B. Private Party Search Exception

Defendant's second argument, that Edwards's nonconsensual search of the S.D. card was unlawful, lacks merit. The Supreme Court has ". . .consistently construed [Fourth Amendment] protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113-114 (1984) (citations omitted); *see also United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2006). An "agent's view of what a private party had freely made available for his inspection [does] not violate the Fourth Amendment" so long as it does not exceed the scope of the private search. *Id*. at 119.

Here, Defendant's Fourth Amendment claims are "wholly inapplicable" to Edwards's private search. Defendant claims Edwards searched Durham's electronic devices at the direction of law enforcement, but the undisputed evidence demonstrates Edwards searched the contents of the drive of her own volition, not by any law enforcement or government agency. In fact, as Defendant readily acknowledges, Edwards did not communicate with law enforcement until "*after* searching Mr. Durham's property." (Doc 21, at 8.) Thus, Defendant's attempt to construe Webster County's instructions to turn in the property as unlawful also fails. Neither does the undersigned agree with Defendant's assertion that Edwards had the "mindset of a person with an agency relationship with the police." (*Id*. at 12.) Edwards's "mindset" is not equivalent to an agency relationship, and her actions were premised on her self-serving interest to remove a suspected criminal from her home. The fact that she may have also searched the devices "specifically to look for evidence of a crime, with the thought of turning the device over to the police" in no way transformed her private search into one conducted as an instrument or agent of the state.

Finally, Durham claims Edwards trespassed when she viewed his property without consent, which Hubert unlawfully exploited by also viewing the photos. As discussed in the Government's brief, the Eighth Circuit has repeatedly rejected similar arguments, finding meritless the argument that the private search exception did not apply in cases of theft or trespass by a private party. *See United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013). The Eighth Circuit has made clear that law enforcement examination of material previously viewed by a private party does not violate the Fourth Amendment. *See Starr*, 533 F.3d at 993. Because Edwards privately searched Durham's devices prior to contacting law enforcement, the private party search exception to the warrant requirement applies. Hubert's subsequent viewing of images Edwards previously viewed and voluntarily displayed to him thus does not amount to a Fourth Amendment violation.

### C. Probable Cause

Defendant next argues the warrant lacks probable cause. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Colbert,* 605 F.3d 573, 576 (8th Cir. 2010). A judge issuing a warrant determines probable cause looking only at "information which is found within the four corners of the affidavit," and reviews the affidavit with a "common sense approach and not in a hypertechnical fashion." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014). To find probable cause, "there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). A reviewing court pays deference to the issuing judge's probable cause determination and simply ensures the judge had a "substantial basis" for concluding probable cause existed. *O'Dell*, 766 F.3d at 873.

Though Durham argues the warrant lacked probable cause because it does not articulate actual evidence of child porn or more specific incriminating evidence of child sex crimes, the warrant does not fail on this basis. *See United States v. Cannon*, 703 F.3d 407, 414 (8th Cir. 2013) (*citing Gates*, 462 U.S. at 238) (holding law enforcement is "not required to show that they had actually found child pornography" to obtain a warrant and must "establish only the 'fair probability that contraband or evidence of a crime will be found in a particular place.'") Contrary to Defendant's assertion, Hubert was not required to describe pictures depicting nudity or actual evidence of child porn to support a probable cause determination.

Even so, based on circumstances outlined within the four corners of the warrant, the undersigned is not convinced that the issuing judge had a substantial basis to find a fair probability that evidence of the specific crime of child porn would be found on Durham's devices. The affidavit relies on essentially two important facts to support probable cause: Durham, an alleged registered sex offender, has an S.D. card with pictures of juveniles taking "selfies" wearing low cut tops. Yet, nothing within the affidavit corroborates Durham's criminal history. The affidavit relates his prior sex crimes only as reported by Edwards. Further, nothing about the way the pictures are described implies sexually explicit conduct or suggests the juveniles depicted in the photos were posed or staged or engaged in obscene or sexual behavior. Hubert does not aver in his affidavit why the pictures raise suspicions, nor articulates any specific experience or training supporting his belief that the types of photos found on the S.D. card support the inference that the suspect possesses child porn on that or other devices.

Unlike *Colbert*,[6] where the Eighth Circuit deferred to the judge's reliance on the affiant's

---

[6] *See Colbert*, 605 F.3d at 578-79 (finding suspect's attempt to lure a young child from a park to his home to watch children's movies supported a warrant to search Defendant's home for child pornography because of the intuitive relationship between acts such as child molestation or enticement and possession of child pornography).

expertise about the connection between child enticement and the possession of child porn; or in *Cannon*, 703 F.3d at 414, where investigators had additional incriminating evidence suggesting Defendant possessed child porn, including disturbing signs, mutilated baby dolls, posters of young boys and a camera tripod, the facts in the present matter do not support a sufficient nexus. Here, in contrast, Hubert's affidavit describing clothed juveniles taking pictures of themselves, coupled with an uncorroborated third-party description of Durham's criminal background does not provide the kind of facts or averments courts have found to support a fair probability of the possession of child porn. Although judges can certainly "draw reasonable inferences" in determining probable cause, *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007), the inferences here were based on Hubert's uncorroborated conclusions. The undersigned thus cannot conclude the issuing judge had a substantial basis for finding probable cause existed.

### D. The *Leon* Good Faith Exception Applies

Even though the Court was not persuaded the facts in the affidavit sufficiently supported the issuing judge's probable cause determination, the *Leon* good faith exception precludes suppression of the evidence. The exclusionary rule does not apply in cases where "the police acted 'in objectively reasonable reliance'" of a search warrant issued by a judge or magistrate. *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Evidence seized as a result of such good-faith reliance will thus be admitted unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702-03 (8th Cir. 2017) (internal quotes omitted);

*see also Leon*, 468 U.S. at 923. Notwithstanding its exceptions, the good-faith inquiry "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (internal quotes omitted). Circumstances include "what the affiant knew but did not include in the application for the warrant." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010).

Here, Defendant argues that the supporting affidavit here was "so lacking in indicia of probable cause" that reliance on the search warrant was "entirely unreasonable." The Court disagrees. Hubert's affidavit provided information of Durham's alleged prior sex crimes, as reported by Edwards, coupled with suspicious photos of juvenile females, which any officer would reasonably find concerning given Durham's history. Additionally, although not included in his affidavit, Hubert had knowledge, based on his investigation, that Defendant had one conviction for Failure to Register as a Sex Offender (*see* doc. 29, Gov. Ex. 5 at 6), had reportedly assaulted his fiancé and failed to update his new address (*Id*. at 2). Hubert had personally interviewed Edwards regarding her discovery of concerning photos of juvenile females on Durham's belongings, her report of confronting Durham and his minimization of his record as well as her claims regarding Durham's assault. Further, not only had Hubert consulted with the Lawrence County, Missouri Prosecuting attorney prior to seeking the warrant, both the Prosecutor and issuing judge determined the warrant was not lacking in probable cause. *See United States v. Hallam*, 407 F.3d 942, 947 (8th Cir. 2005) (holding that an officer may reasonably defer to the judgment of the prosecutors and the issuing judge that the affidavit provided probable cause.) Hubert had no reason to question the issuing judge's determination, endorsed also by the prosecuting attorney.

Consequently, the undersigned cannot find that any reasonably well-trained officer would

have known that the search of the devices was illegal in light of all the circumstances. Based on the above, the Court concludes the supporting affidavit was not "so lacking in indicia of probable cause" and that Hubert's reliance on the search warrant was not "entirely unreasonable." Additionally, as discussed above, the affidavit did not include a false or misleading statement. And further, Defendant does not argue, nor does the undersigned find the judge "wholly abandoned his judicial role in issuing the warrant" or that the warrant was "so facially deficient that no police officer could reasonably presume the warrant to be valid." Because Hubert objectively and reasonably relied on a search warrant issued by a neutral magistrate, the evidence should not be suppressed.

### III. Recommendation

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. 21) be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE:   December 5, 2019